UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WALTER F. SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:03-CV-1160 CAS |
| ) | |
| MCNEARNEY & ASSOCIATES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants McNearney & Associates, LLC ("McNearney"); Lawyer's Foreclosure Specialists, Inc. ("Lawyer's Foreclosure"); and Centex Home Equity Company, LLC's ("Centex") motions for summary judgment against plaintiff. Plaintiff filed responses in opposition to defendants McNearney and Centex's motions for summary judgment. Plaintiff informed the Court he wished to dismiss Counts II, III, and IV against McNearney, Lawyer's Foreclosure, and Centex. Plaintiff asserted that Count V was directed only to Centex. The Court will grant plaintiff's motion to dismiss Counts II, III, and IV, thereby dismissing all claims against Lawyer's Foreclosure. The Court will grant summary judgment to defendant McNearney on Count I of plaintiff's Second Amended Complaint and to defendant Centex on Count V of plaintiff's Second Amended Complaint. The Court will deny the parties' pending discovery motions as moot.

**I. Background**

Scott filed this action against defendants alleging violation of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692, violation of his civil rights and property rights under 42 U.S.C. §§ 1981, 1982, actionable fraud, and intentional unlawful entry and trespassing. Scott asserts that defendants' communications regarding the non-judicial foreclosure of

his property at 1408 East Linton Avenue and the actual foreclosure violated these laws. On July 15, 2004, the Court dismissed Count I against defendants Lawyer's Foreclosure and Centex. The defendants filed for summary judgment on the remaining claims against them. As stated above, the Court will grant plaintiff's motion to dismiss Counts II, III, and IV, thereby dismissing all claims against Lawyer's Foreclosure. The only remaining claims are Count I ("FDCPA") against defendant McNearney and Count V (unlawful entry and trespassing) against defendant Centex.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c).

Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Anderson, 477 U.S. at 257; City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A plaintiff's verified complaint is the equivalent of an affidavit in opposition to a motion for summary judgment, and a complaint signed under penalty of perjury pursuant to 28 U.S.C. § 1746 is the equivalent of a verified complaint. Roberson v. Hayti Police Dept., 241 F.3d 992, 994-95 (8th Cir. 2001). "Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." Id. (citing Williams v. Adams, 935 F.2d 960, 961 (8th Cir. 1991)). Plaintiff filed a verified second amended complaint, which will be treated as an affidavit in response to defendants' motions for summary judgment.

Plaintiff's cross-motions for summary judgment and statements of uncontroverted material facts were stricken by the Court because they were untimely.

## III. Discussion

### A. Facts

Upon review of defendants Centex and McNearney's motions for summary judgment and plaintiff's verified Second Amended Complaint, the Court finds that there is no genuine issue of material fact and the Court can grant summary judgment. The uncontroverted facts as found by this Court are given below.

Until July 29, 2003, Scott held legal title to real property located at 1408 East Linton in the City of St. Louis, Missouri. (Scott Dep. 6:18-7:5). On May 15, 2000, Scott mortgaged the East Linton property to American Equity Mortgage for $59,100.00. (McNearney Exs. 2, 3). On January 24, 2001, American Equity Mortgage assigned the deed and Promissory Note for the property to

defendant Centex. (McNearney Exs. 4, 5). Scott's variable interest promissory note required payments of $540.17 per month. (Centex Ex. 2).

In November 2001, Scott became delinquent on his loan with Centex by failing to make his monthly payment. (Centex Ex. 6, ¶ 3). Centex sent a letter to Scott, in February 2002, regarding his delinquency and his need to bring the loan current. (Centex Ex. 6, ¶ 4). The mortgage on the East Linton property was reclassified by Centex from "loss mitigation" to "foreclosure" in March 2002. (Centex Ex. 6, ¶ 5). Centex retained defendant McNearney to foreclose the Note and Deed of Trust. (Centex Ex. 6, ¶ 9). On March 12, 2002, attorney Timothy McNearney mailed a letter to Scott informing him that McNearney was retained by Centex to begin foreclosure proceedings. (McNearney Ex. 6).

On February 18, 2003, Scott filed a petition for bankruptcy in the United States District Court for the Eastern District of Missouri. (Centex Ex. 7). Centex stayed the foreclosure due to the bankruptcy filing (Centex Ex. 6, ¶ 10). On May 22, 2003, McNearney mailed Scott a letter indicating the amount of Scott's arrearage that McNearney intended to present to the bankruptcy court. (McNearney Ex. 8). On May 28, 2003, McNearney mailed Scott a letter indicating that Centex would not accept Scott's proposal for correcting the arrearage. (McNearney Ex. 9). On June 4, 2003, the Bankruptcy Court dismissed Scott's bankruptcy petition. (McNearney Ex. 10).

On June 26, 2003, McNearney mailed Scott a letter indicating that Centex had retained McNearney to "commence foreclosure proceedings." (Centex Ex. 8). The East Linton property was sold to Centex at the foreclosure sale on July 29, 2003. (Centex Ex. 9). Scott faxed a letter to McNearney on July 31, 2003, stating that "Federal law gives [him] thirty (30) days to negotiate before foreclosure begins." (McNearney Ex. 14). McNearney sent a letter to Scott, dated July 31, 2003, stating that the foreclosure sale had taken place on July 29, 2003. (McNearney Ex. 13). On

December 24, 2003, Centex held title to the East Linton property, which was vacant, and "winterized" it by changing the locks and otherwise securing it. (Centex Ex. 6, ¶ 16).

### B. Fair Debt Collection Practices Act

In his complaint, Scott alleges that McNearney violated the FDCPA by (1) serving a contradictory collection letter; (2) foreclosing on the East Linton property unlawfully in a non-judicial foreclosure, (3) using unfair and unconscionable means to collect a debt; (4) threatening to take an action that could not be taken or was not intended to be taken, (5) using a false representation or deceptive means to collect or attempt to collect a debt, (6) failing to send plaintiff a written notice in the initial communication, or within five days thereafter, that effectively conveyed the information required by § 1692g(a) of the FDCPA; (7) contradicting, overshadowing, and obscuring the validation/verification language required by § 1692g(a) by extraneous, threatening, and confusing language; (8) otherwise using false, deceptive, misleading, and unfair or unconscionable means to collect an alleged debt from the plaintiff; and (9) failing to give plaintiff thirty (30) days notice rights to dispute any claim. (Second Am. Compl. ¶¶ 10, 11). Scott attaches a letter from McNearney to Scott dated June 26, 2003 to his complaint.

McNearney responds that the statements in the June 26, 2003, letter are not actionable under 15 U.S.C. § 1692(g) because that letter was not the initial communication with Scott. Further, McNearney asserts that the June 26, 2003 letter was not contradictory, and did not threaten action that could not be legally taken.

#### 1. Initial Communication under 15 U.S.C. § 1692(g)

The FDCPA was intended to protect consumers from the abusive and deceptive practices employed by some debt collectors. See United States v. National Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996). The FDCPA provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer by the debt collector; and
> (5) a statement that upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the original creditor.

15 U.S.C. § 1692(g)(a). Attached to plaintiff's complaint is a letter from McNearney dated June 26, 2003. (Second Am. Compl. Ex. 1). Plaintiff asserts that this letter was a contradictory collection letter, failed to comply with 15 U.S.C. § 1692, used contradicting, overshadowing, and obscuring language, and failed to give the 30 day notice of rights to dispute the claim.

McNearney asserts that the June 26, 2003, letter was not the initial communication with Scott. McNearney states that the initial communication with Scott was a letter from McNearney to Scott dated March 12, 2002. (McNearney Ex. 6). Scott asserts that any letters received prior to the June 26, 2003 letter were voided because he declared bankruptcy and was in bankruptcy court from February 18, 2003 until June 4, 2003. McNearney contends that the bankruptcy proceedings did not reverse any prior activities, but only suspended them during the temporary stay.

The FDCPA does not define what constitutes an initial communication. Communication is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a). Scott does not dispute that the March 12, 2002 letter was the first communication from McNearney. Scott's assertion that the bankruptcy filing voided any prior

communications has no basis in law. The Court believes that the March 12, 2002 letter was the initial communication and Scott cannot sue under § 1692g(a) regarding the June 26, 2003 letter because it is not an "initial communication" or a communication within five days after the initial communication.[1] Therefore, Scott's claim under § 1692g(a) fails as a matter of law.

In the alternative, even if the June 26, 2003 letter was the initial communication as defined in 15 U.S.C. § 1692g(a), the letter did not use contradictory or overshadowing language. The letter states:

> Dear Mr. Scott,
>
> Please be advised that this firm has been retained by Centex Home Equity Company, LLC f/k/a Centex Home Equity Corporation, to commence foreclosure proceedings upon the Note and Deed of Trust dated November 1, 2001, which is secured by the real property commonly know as 1408 East Lincoln [sic] Ave., St. Louis, MO 63107. I have been informed by my client that you have failed to cure your default pursuant to the terms of your Note and Deed of Trust above referenced. This letter is written notice to you that my client is exercising its option to accelerate the balance due thereon and demand is hereby made for the immediate payment of the total balance due upon said Note and Deed of Trust. Absent immediate payment, foreclosure proceedings shall commence forthwith.
>
> Please be advised, that pursuant to the provisions of the Fair Debt Collections Practices Act, unless you within 30 days after the receipt of this notice, dispute the validity of this debt, or any portion thereof, the debt will be assumed to be valid. If you notify me in writing within the 30-day period that the debt, or any portion thereof, is disputed, I will obtain verification of the debt, or a copy of the judgment and a copy of said verification or judgment will be mailed to you. In addition, if you request in writing, within this thirty (30) day period, I will provide you with the name and address of the original creditor if different from the current creditor identified herein.
>
> Be further advised that foreclosure proceedings will not be delayed during this 30-day period. If you have any questions regarding your balance or the sums due under your loan, please contact Centex Home Equity Company, LLC f/k/a Centex Home Equity Corporation immediately at 888-850-9398.

---

[1] If Scott had asserted a claim regarding the March 12, 2002 letter it would be barred by the statute of limitations. See 15 U.S.C. § 1692k(d).

(Compl. Ex. 1.)  The last sentence states:  "This letter is an attempt to collect a debt and any information received will be used for that purpose."  Id.

"Although the text of § 1692(g) does not explicitly provide that disclosures required by it must be made in a non-confusing manner, courts have held that the statute implies that the required disclosures be set forth in a form and within a context that does not obfuscate its meaning."  Peter v. GC Services, L.P., 310 F.3d 344, 348-49 (5th Cir. 2002).  See Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997); Teran v. Kaplan, 109 F.3d 1428, 1431-34 (9th Cir. 1997); Russell v. Equifax A.R.S., 74 F.3d 30, 34-35 (2nd Cir. 1996); Miller v. Payco-General Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991).

Courts have held that a notice contains overshadowing or contradictory language when it contains the validation notice of § 1692g and subsequently instructs customers to dispute their debts in a way contrary to the statutory requirements or where payment is demanded in a concrete period of time shorter than the thirty day period.  See e.g. Avila v. Rubin, 84 F.3d 222, 226 (7th Cir. 1996) (informing debtor he has ten days to respond if he does not dispute validity of debt violates § 1692g); Miller, 943 F.3d at 484 (informing debtor to dispute debt by phone is in opposition to statutory requirements is confusing and contradictory).  Validation notices have also been found to use overshadowing and contradictory language where screaming headlines, bright colors, and huge lettering are used regarding the debt or the notice is in fine print, faint print, or confusing typeface. See Peter, 310 F.3d at 349, n. 2 (citations omitted).

Scott asserts that the contradictory, overshadowing language is contained in the two sentences, "Please be advised, that pursuant to the provisions of the Fair Debt Collections Practices Act, unless you within 30 days after the receipt of this notice, dispute the validity of this debt . . ." and "Be further advised that foreclosure proceedings will not be delayed during this 30-day period."

- 8 -

(Compl. Ex. 1). Scott asserts that the second sentence contradicts, obscures, and overshadows the first sentence.

The Federal Trade Commission's staff commentary on the FDCPA states:

1. Pre-notice collection. A debt collector need not cease normal collection activities within the consumer's 30-day period to give notice of a dispute until he receives a notice from the consumer. An attorney debt collector may take legal action within 30 days of sending the notice, regardless of whether the consumer disputes the debt. If the consumer disputes the debt, the attorney may still take legal action but must cease collection efforts until verification is obtained and mailed to the consumer. A debt collector may report a debt to a credit bureau within the 30-day notice period, before he receives a request for validation or a dispute notice from the consumer.

53 Fed. Reg. 50109. Therefore, a debt collector can pursue collection activities, legal action, or even foreclosure during the 30 day period. See 15 U.S.C. § 1692g;[2] see also Bush v. Loanstar Mortgage Serv., 286 F.Supp.2d 1210, 1215 (N.D. Ca. 2003) (a debt collector is not required to wait until the end of the 30 day period to take action to collect a debt); Ditty v. Checkrite, Ltd., 973 F. Supp. 1320, 1329 (D. Utah 1997) (no express requirement that debt collector cease activity during 30-day validation period).

The sentence, "Be further advised that foreclosure proceedings will not be delayed during this 30-day period." does not violate the FDCPA. This sentence follows the paragraph which outlines plaintiff's right to dispute the debt or obtain the name and address of the original creditor within thirty days. A similar sentence has been held permissible under the FDCPA:

The disputed sentence [warned] that even though [debtor] had thirty days to dispute the validity of the debt, the creditor could initiate legal action within that time, which

---

[2]"If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion, thereof, is disputed, or that the consumer requests the name and address of the original creditor. . . " the debt collector must stop "collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

> not only was an accurate statement of the creditor's right, but arguably increased the plaintiff's knowledge by providing additional information not required by the Act.

Hillaire v. Delta Funding Corp., No. 98-7188, WL 31123860, at *3 (E.D.N.Y. 2002).

The entire wording of the letter is in the same typeface and font. The only sentence emphasized in bold is the last sentence, which states, "This letter is an attempt to collect a debt and any information received will be used for that purpose." This last sentence is the same typeface and size as the remainder of the letter and actually highlights part of the notice required by the statute. The sentence stating that foreclosure proceedings would not cease during the 30-day period was not set apart from or emphasized more than the validation notice. Therefore, the Court finds, in the alternative that plaintiff's claim of overshadowing or contradictory language in violation of § 1692g must be denied.

### 2. Thirty Day Notice

Scott also asserts that McNearney failed to give him thirty days notice of his right to dispute any claim. That claim is without merit. The June 26, 2003 letter stated plaintiff's right to dispute the debt or obtain the name of the original creditor as required by the FDCPA. See 15 U.S.C. § 1692g(a)(4)-(5). After more than thirty days elapsed, on July 29, 2003, Centex foreclosed on the East Linton property. Scott did not contact McNearney until after the foreclosure sale was conducted. Further, Scott's fax to McNearney did not dispute the validity of the debt or request the name and address of the original creditor. (McNearney Ex. 14). Therefore, Scott's claim that McNearney did not provide him with notice that he had thirty days to dispute the validity of the debt is without merit. As discussed above, McNearney did not have to stop foreclosure proceedings during this thirty day period. See supra Part III.B.1.

### 3. Unfair and Unconscionable Means of Debt Collection and Unlawful Foreclosure

Scott also asserts that McNearney used unfair and unconscionable means to collect a debt and unlawfully foreclosed on his property. The FDCPA states that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the range of the foregoing, the following conduct is a violation of this section:
> . . . .
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>     (A) there is not present right to possession of the property claimed as collateral through an enforceable security interest;
>     (B) there is no present intention to take possession of the property;
>     (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

Scott has not disputed that he was in default on his mortgage and the property was subject to foreclosure if he defaulted. Further, Scott has not shown that there was no present right to possession, no present intention to take possession, or that the property was exempt by law from the dispossession.

Scott also claims that the publication of the foreclosure was premature because McNearney should have waited after the thirty day validation period under § 1692g had passed plus the twenty day publication period under Missouri law, MO. REV. ST. § 443.310.[3] This argument also fails. Scott has not cited any authority and the Court has not found any that would require McNearney to wait fifty days after the June 26, 2003 letter to foreclose on the East Linton property. McNearney did not

---

[3]The Missouri statute states, "All sales of real estate under a power of sale contained in any mortgage or deed of trust executed after August 28, 1989, shall be made in the county where the land to be sold is situated, and not less than twenty days notice of such sale shall be given, whether so provided in such mortgage or deed of trust or not. MO. REV. ST. § 443.310.

violate the FDCPA by beginning foreclosure proceedings before the end of the thirty day validation period. See supra Part III.B.1.

Scott has not asserted any other conduct by McNearney that would constitute unfair or unconscionable means to collect a debt. Scott has not shown a general issue of material fact exists concerning these claims and McNearney is entitled to summary judgment.

### 4. False, Deceptive, or Misleading Means to Collect a Debt

Scott also asserts that McNearney threatened to take an action that may not be taken or that is not intended to be taken and used false representations and deceptive means to collect a debt. (Compl. ¶ 11(b), (c), (f)). The FDCPA states:

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (5) The threat to take any action that cannot legally be taken or is not intended to be taken
> . . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(5),(10). "In evaluating whether a debt collection letter is false, misleading or deceptive in violation of § 1692e, the letter must be viewed through eyes of an unsophisticated consumer." Peters v. General Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (citing Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000)). The unsophisticated consumer standard protects consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder. Duffy, 215 F.3d at 874 (citations omitted). "This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness

to protect debt collectors from liability for peculiar interpretations of collection letters." Id. at 874-75.

Scott asserts that because McNearney is not registered to do business in Missouri, it did not have the right to foreclose on his property; therefore the June 26, 2003 letter threatened to take action that could not be legally taken and misrepresented McNearney's status as an out-of-state firm. Scott also claims that McNearney misused the name of a Missouri corporation known as McNearney and Associates, Inc. Again, Scott's claims do not have any legal merit.

McNearney is a law firm based in Leawood, Kansas. Scott bases his claim on the Missouri fictitious name law, which states:

> Every name under which any person shall do or transact business in this state, other than the true name of such person, is hereby declared to be a fictitious name and it shall be unlawful for any person to engage in or transact any business in this state under a fictitious name, and it shall be unlawful for any person to engage in or transact business in this state under a fictitious name without first registering same with the secretary of state as herein required.

MO. REV. ST. § 417.200. Further, Scott asserts that McNearney violated MO. REV. ST. § 417.150, which states that:

> No person, society, association or corporation shall assume adopt or use the name of a military, ex-military, patriotic, benevolent, humane, fraternal, or charitable organization incorporated or organized under the laws of this state . . . or a name that so nearly resembling the name of such incorporated organization as to be a colorable imitation thereof, or calculated to deceive any person with respect to such corporation.

As McNearney points out, these laws do not apply to McNearney and if they did, they would not give Scott a cause of action under the FDCPA. First, McNearney does not have a fictitious name because there is no allegation that McNearney & Associates, L.L.C. is not the true name of the partnership as defined under Missouri law. See MO. REV. ST. § 417.210(1) (requiring registration of all persons, general partnership, corporation, or other business organizations who engage in

business in the state under a fictitious name or other name under than the true name of the entity). Second, Missouri law also provides that "a partnership or other entity founded for the purpose of a licensed profession shall not be deemed to be engaged in the conduct of business, notwithstanding the transaction by such entity of business ancillary to the practice of such licensed profession." MO. REV. ST. § 417.210(6). Therefore, McNearney, a law partnership which conducts a licensed profession, is not required to register under this business statute. Thus, McNearney was not required to register before instituting foreclosure proceedings.

Third, it is irrelevant that McNearney has the same name as a Missouri corporation. McNearney is based in Kansas. Scott has not shown that he was confused by the existence of two companies named McNearney because all of the correspondence from McNearney had the Kansas address. Also, Scott sent and faxed information to McNearney to its Kansas address and phone number.[4] (McNearney Exs. 6, 8-9, 12-14).

Finally, even if McNearney was required to register and failed to do so, Scott has not shown how this constituted a misrepresentation under the FDCPA. Scott does not allege any facts that show that the June 26, 2003 letter is "false, misleading or deceptive in violation of § 1692e . . . through the eyes of an unsophisticated consumer." There has been no evidence that the failure to register in Missouri or the fact that McNearney is based in Kansas would mislead an unsophisticated consumer regarding the collection of a debt. Scott's claim fails as a matter of law and summary judgment will be granted to McNearney as to Count I of the complaint.

---

[4]The Court does note that plaintiff initially served McNearney & Associates, Inc., which is based in Ellisville, Missouri, instead of McNearney & Associates, LLC.

### C. Unlawful Entry and Trespassing

In plaintiff's remaining claim, Count V for intentional unlawful entry and trespassing, plaintiff asserts that defendant Centex trespassed on the property at 1408 East Linton on December 24, 2003, without plaintiff's consent. Plaintiff asserts that Centex changed the locks on the premises.

"An action in trespass is based on a violation of possession and the party making the claim must have the legal right to possession to support an action." Citibank and Trust Co. of Moberly, Missouri v. Thomas, 735 S.W.2d 121, 122 (Mo. Ct. App. 1987). "Liability for trespass exists whether or not done in good faith and with reasonable care, in ignorance or under mistake of law or fact." Hostler v. Green Park Dev. Co., 986 S.W.2d 500, 506 (Mo. Ct. App. 1999).

In this case, it is clear that Scott did not have the legal right to possession of the property when the alleged trespass occurred. "The sale and conveyance of property under a foreclosure of a deed of trust passes title as held by the mortgagor as of the date of the deed of trust." Citibank, 735 S.W.2d at 122. It is an undisputed fact that Centex held title to the East Linton property as of July 29, 2003. (Centex Ex. 9). Because Scott had no legal right to the property as of the date of foreclosure, he cannot maintain a trespass action against Centex. Therefore, the Court will grant summary judgment in favor of Centex on Count V.

## IV. Conclusion

In summary, the Court will grant plaintiff's request to dismiss counts II, III, and IV against all defendants; thereby dismissing defendant Lawyer's Foreclosure. The Court will grant summary judgment in favor of McNearney & Associates on Count I under the FDCPA and Centex Home Equity on Count V common law unlawful entry and trespassing. The Court will deny the parties' pending discovery motions as moot. The Court will deny plaintiff's motion to vacate the Order of March 11, 2005.

Accordingly,

**IT IS HEREBY ORDERED** that Counts II, III, and IV are dismissed against all defendants.

**IT IS FURTHER ORDERED** that defendant Lawyer's Foreclosure Services is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that defendant Lawyers Foreclosure Services' motion for summary judgment is **DENIED as moot**. [Doc. 98]

**IT IS FURTHER ORDERED** that defendant McNearney & Associates, LLC's motion for summary judgment is **GRANTED**. [Doc. 104]

**IT IS FURTHER ORDERED** that defendant Centex Home Equity Company, LLC's motion for summary judgment is **GRANTED**. [Doc. 107]

**IT IS FURTHER ORDERED** that plaintiff's motions to compel and for sanctions are **DENIED as moot**. [Docs. 101, 102]

**IT IS FURTHER ORDERED** that defendant McNearney and Associates, LLC's motion to strike plaintiff's motion to compel and motion for sanctions is **DENIED as moot**. [Doc. 111]

**IT IS FURTHER ORDERED** that plaintiff's motion to vacate is **DENIED**. [Doc. 126]

An appropriate order of dismissal and judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 26th day of April, 2005.